**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

*Jacksonville* Division

*"Amended"*

**CIVIL RIGHTS COMPLAINT FORM**

LEGAL MAIL
PROVIDED TO WAKULLA CI ANNEX

MAY 12 2010

FOR MAILING

*STEVEN LATHEL JONES*

*DC# J21218*

CASE NUMBER: *3:09-CV-1150-J-32JRK*
(To be supplied by Clerk's Office)

(Enter full name of each Plaintiff and prison
number, if applicable)

*"JURY TRIAL DEMAND"*

v.

*JOHN RUTHERFORD, SHERIFF*
*DUVAL COUNTY (FL) SHERIFF'S OFFICE, et. al.*
*L.M. HARTT, BADGE #6505, DEPUTY SHERIFF*
*DUVAL COUNTY SHERIFF'S OFFICE*
*C. WILKIE, BADGE# 6052, DEPUTY SHERIFF*
*(K-9) OFFICER, DUVAL COUNTY SHERIFF'S OFFICE*
*DETECTIVE DAVID KING, NASSAU COUNTY SHERIFF'S OFFICE*
*ONE (1) UNKNOWN NURSE; ONE (1) UNKNOWN PHYSICIAN*

(Enter full name of each Defendant. If *DUVAL COUNTY DETENTION Center*
additional space is required, use the blank
area directly to the right).

_____/

**ANSWER ALL OF THE FOLLOWING QUESTIONS:**

I.   PLACE OF PRESENT CONFINEMENT: *WAKULLA Correctional Institution Annex*
(Indicate the name and location)

*110 Melaleuca DRIVE, CRAWFORDVILLE, FLORIDA 32327*

II.   DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN
THE FLORIDA DEPARTMENT OF CORRECTIONS? Yes ( ) No (✓)

[If your answer is YES, after reviewing the exhaustion requirements, answer the following
questions]

EXHAUSTION OF ADMINISTRATIVE REMEDIES: Pursuant to the Prison Litigation Reform Act or 1995, Title VIII, Section 803 Amendments to Civil Rights of Institutionalized Persons Act, exhaustion of administrative remedies is required in any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility. Any required grievances, appeals, and responses must be submitted to the Court to verify exhaustion. (If your Complaint concerns conditions at state prison facilities, you must answer the following questions in Section II of this form. If the Complaint concerns conditions at a county jail or local correctional facility, you must complete Section III of this form.)

EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:

General Grievance

1.  Informal Grievance (Form DC3-005)
2.  Formal Grievance (Form DC1-303)
3.  Appeal to the Office of Secretary (Form DC1-303)

Other Grievance

Inmates are not required to utilize the informal Grievance process in the case of an emergency grievance, a grievance of reprisal, a grievance of a sensitive nature, a grievance alleging violation of the Americans with Disabilities Act, a medical grievance, a grievance involving admissible reading material, a grievance involving gain time governed by rule 33-11.0065 Incentive Gain Time, or a grievance involving disciplinary action (does not include corrective consultations) governed by chapter 33-22. The grievance steps are set forth in Fla. Admin. Code Chapter 33-29.

Questions:

A.  Emergency Grievance, Grievance of Reprisal, or Grievance of a Sensitive Nature, Grievance Alleging Violation of the American with Disabilities Act, Medical Grievance, Grievance, Grievance Involving Admissible Reading Material, Grievance Involving Gain Time Governed by Rule 33-11.0065 Incentive Gain Time, or Grievance Involving Disciplinary Action Governed by Chapter 33-22 (Request for Administrative Remedy or Appeal, bypassing the informal grievance step).

1.  Did you submit an above-mentioned grievance to the Superintendent and/or to the office of Secretary (Form DC1-303)? Yes ( ) No ( ✓)

2.  If so, you must attach a copy of the grievance and response to this Complaint form.

3.  Were you denied emergency status? Yes ( ) No ( ✓)

    a.  If so, did you go through the informal grievance, formal grievance and appeal process? Yes ( ) No ( ✓)

    b.  If so, you must attach copies of the grievance/appeals and responses to this Complaint form.

B.  Informal Grievance (Request for Interview)

1.  Did you submit an informal grievance (Form DC3-005)? Yes ( ) No ( ✓ )

2.  If so, you must attach a copy of the grievance and response to this Complaint form.

C.  <u>Formal Grievance</u> (Request for Administrative Remedy or Appeal)

1.  Did you have a disciplinary hearing concerning this matter? Yes ( ) No ( ✓ )

2.  If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this Complaint form.

3.  Did you submit a formal grievance (Form DC1-303)? Yes ( ) No ( ✓ )

4.  If so, you must attach a copy of the grievance and response to this Complaint form.

D.  <u>Appeal to the Office of the Secretary</u> (Request for Administrative Remedy or Appeal)

1.  Did you submit an appeal to the Office of the Secretary (Form DC1-303)? Yes ( ) No ( ✓ )

2.  If so, you must attach a copy of the appeal and response to this Complaint form.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _____ day of ___*MAY*___, 2 _10_.

✗ _____
Signature of Plaintiff

III.   DOES YOUR COMPLAINT CONCERN EVENTS IN A COUNTY JAIL OR LOCAL
       FACILITY?  Yes ( ) No ( ✓)

       If your answer is YES, answer the following questions.

A.   Is there a grievance procedure at your institution or jail?  Yes ( ) No ( ✓)

B.   Did you present the facts relating to your Complaint in the grievance procedure?  Yes
     ( ) No ( ✓)

C.   If your answer is YES:

     1.   What steps did you take? _____N/A_____

     _____

     2.   What were the results? _____N/A_____

     _____

     3.   To demonstrate exhaustion, you must submit copies of all relevant
          grievances/appeals and responses.

D.   If your answer is NO, explain why not: _COMPLAINT DOES NOT CONCERN_
     _EVENTS IN A COUNTY JAIL OR LOCAL FACILITY_____

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING ANSWERS TO THE
QUESTIONS IN THIS SECTION ARE TRUE AND CORRECT.

Signed this _____ day of ____May_____, 2 0 10____.

                                        X_____
                                        Signature of Plaintiff

IV.    PREVIOUS LAWSUITS:

A.   Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (✓)

B.   Have you initiated other lawsuits in federal court dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( ) No (✓)

C.   If your answer to either A or B is YES, describe each lawsuit in the space provided below. If there is more than one lawsuit, describe all additional lawsuits on a separate piece of paper, using the same format as below.

1.  Parties to previous lawsuit:

Plaintiff(s): _____ N/A _____

Defendant(s): _____ N/A _____

2.  Court (if federal court, name the district; if state court, name the county):
_____ N/A _____

3.  Docket Number: _____ N/A _____

4.  Name of judge: _____ N/A _____

5.  Briefly describe the facts and basis of the lawsuit: _____ N/A _____

6.  Disposition (Was the case dismissed? Was it appealed? Is it still pending?):
_____ N/A _____

7.  Approximate filing date: _____ N/A _____

8.  Approximate disposition date: _____ N/A _____

D.   Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify theses suits below by providing the case number, the style, and the disposition of each case:

_____

_____

_____

_____

V.    **PARTIES:** In part A of this section, indicate your <u>full name</u> in the first blank and your full mailing address in the second blank. Do the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.   Name of Plaintiff: _STEVEN LATHEL Jones, DC # · J21218_

Mailing address: _WAKULLA Correctional Institution Annex_
_110 Melaleuca Drive, Crawfordoville, Florida   32327_

B.   Additional Plaintiffs: _____

_____

_____

In part C of this section, indicate the <u>**full name**</u> of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed. For any additional Defendants, use parts D through G of this section for the names, addresses, positions and places of employment:

C.   Defendant: _JOHN RUTHERFORD, SHERIFF_

Mailing Address: _501 EAST BAY STREET_
_JACKSONVILLE, FLORIDA  32202-2975_

Position: _SHERIFF,_

Employed at: _DUVAL County SHERIFF'S OFFICE_

D.   Defendant: _L.M. HARTT,   BADGE No. 6505_

Mailing Address: _501 E. BAY STREET_
_JACKSONVILLE, FLORIDA  32202-2975_

Position: _DEPUTY SHERIFF_

Employed at: _DUVAL County SHERIFF'S OFFICE_

E. Defendant: _C. WILKIE (BADGE No. 6052)_

Mailing Address: _501 EAST BAY STREET_

_JACKSONVILLE, FLORIDA 32202-2975_

Position: _DEPUTY SHERIFF_

Employed at: _DUVAL County SHERIFF'S OFFICE_

F. Defendant: _One (1) Unknown Nurse_

Mailing Address: _501 EAST BAY STREET_

_JACKSONVILLE, FLORIDA 32202-2975_

Position: _Nurse_

Employed at: _DUVAL County Detention Center_

G. Defendant: _One (1) Unknown Physician_

Mailing Address: _501 EAST BAY STREET_

_JACKSONVILLE, FLORIDA 32202-2975_

Position: _PHYSICAN_

Employed at: _DUVAL County Detention Center_

DEFENDANT: DAVID KING

MAILING ADDRESS: 76001 BOBBY MOORE CIRCLE

YULEE, FLORIDA 32097-5452

POSITION: Detective

EMPLOYED AT: NASSAU County SHERIFF'S OFFICE

VI.   STATEMENT OF CLAIM: State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. Any claim that is not related to the same basic incident or issue must be addressed in a separate Civil Rights Form.

1. PLAINTIFF ASSERTS DEFENDANTS RUTHERFORD, HARTT, WILKIE, KINGS, LAW ENFORCEMENT OFFICERS WHILE ACTING UNDER COLOR OF STATE LAW, KNOWINGLY, WILLFULLY AND WITH INTENT TO VIOLATE PLAINTIFF'S FEDERAL CONSTITUTIONAL RIGHTS SECURED, U.S. CONSTITUTION AMENDMENT VIII, XIV WHEN SUBJECTING PLAINTIFF TO ATTACK BY K-9 POLICE DOG WHICH RESULTED IN SERIOUS PHYSICAL INJURY, FAILURE TO PROTECT PLAINTIFF FROM SERIOUS PHYSICAL INJURY.

2. PLAINTIFF ASSERTS DEFENDANTS ONE (1) UNKNOWN NURSE AND ONE (1) UNKNOWN PHYSICIAN WHILE ACTING UNDER COLOR OF STATE LAW ACTED WITH DELIBERATE INDIFFERENCE WHEN WILLFULLY AND WITH INTENT FAILED TO PROVIDE ADEQUATE MEDICAL CARE AND TREATMENT RESULTING IN INJURY, PAIN, DURESS AND EMOTIONAL SUFFERING.

VII.   STATEMENT OF FACTS: State as briefly as possible the FACTS of your case. Describe how each defendant was involved. **Do not make any legal arguments or cite any cases or statutes.** State with as much specificity as possible the facts in the following manner:

1.   Name and position of person(s) involved.
2.   Date(s).
3.   Place(s).
4.   Fact(s) or event(s) giving rise to your claim, including involvement of each defendant.
5.   Nature and extent of injury (i.e., physical injury or how you were harmed by the acts of the defendant(s)).

1. PLAINTIFF ASSERTS CLAIMS OF VIOLATION OF FEDERAL PROTECTED CONSTITUTIONAL RIGHTS BY DEFENDANTS, POLICE AGENTS AND MEDICAL CARE PROVIDERS, ALL INDIVIDUALS ACTING UNDER COLOR OF STATE LAW IN THEIR INDIVIDUAL CAPACITIES IN VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS, U.S. CONSTITUTION AMENDMENT VIII, XIV.

2. ON OCTOBER 23, 2007 IN DUVAL COUNTY, FLORIDA AT APPROXIMATELY 3:30pm, PLAINTIFF WAS VISITING THE RESIDENCE OF ERNIE DAY, 4523 HUNT STREET, JACKSONVILLE, FLORIDA.

3. MR. DAY HAD PREVIOUSLY REQUESTED THE PLAINTIFF'S ASSISTANCE IN MAKING REPAIRS TO PIPES IN HIS MOBILE HOME.

Statement of Facts, continued:

4. AT THE RESIDENCE, PLAINTIFF AND MR. DAY WERE SITTING INSIDE THE RESIDENCE DISCUSSING THE REPAIRS TO BE MADE TO THE PIPES, WHEN MR. DAY'S WIFE ENTERED THE ROOM (i.e, STEPHANIE DAY), INFORMING MR. DAY THAT A INDIVIDUAL WAS OUTSIDE AND WANTED TO SPEAK TO HIM BY THE ROAD.

5. PLAINTIFF TOLD MR. DAY PRIOR TO HIS EXIT FROM THE RESIDENCE TO SPEAK TO THE INDIVIDUAL; THAT HE WOULD START THE REPAIRS.

6. PLAINTIFF FOLLOWING MR. DAY'S LEAVING THE RESIDENCE, HIMSELF EXITED THE MOBILE HOME BY THE BACK DOOR WHERE HE HEADED TO THE SEPTIC TANK BEHIND THE RESIDENCE.

7. PLAINTIFF, THEN CRAWLED UNDER THE MOBILE HOME AND PREPARED TO PERFORM REPAIRS. PLAINTIFF LOCATED THE PIPE IN NEED OF REPAIR; AND HE DID FOLLOWING THE PIPE TO THE FRONT PORTION UNDER THE MOBILE HOME IDENTIFIED THE PROBLEM REGARDING THE PIPE AND INITIATED PERFORMING THE REPAIRS.

8. PLAINTIFF THEN ADJUSTED HIMSELF UNDER THE MOBILE HOME, LAYING ON HIS BACK, WHILE ATTEMPTING TO ADJUST THE PIPE

9. PLAINTIFF LOOKED to HIS RIGHT AND NOTICED SEVERAL INDIVIDUALS WALKING IN HIS DIRECTION TOWARD THE MOBILE HOME.

10. PLAINTIFF NOTICED AN UNKNOWN INDIVIDUAL, LATER IDENTIFIED AS DEFENDANT C. WILKIE, A LAW ENFORCEMENT OFFICER, K-9 UNIT, DUVAL COUNTY SHERIFF'S OFFICE KNEELING ON THE RIGHT SIDE OF PLAINTIFF AT A DISTANCE OF 4-5 YARDS.

11. THE INDIVIDUAL FAILED TO IDENTIFY HIMSELF AS A LAW ENFORCEMENT OFFICER.

12. BOTH PLAINTIFF AND DEFENDANT C. WILKIE, LOOKED AT EACH OTHER MOMENTARILY

13. DEFENDANT C. WILKIE PULLED OUT WHAT APPEARED TO BE A SMALL PEN FLASHLITE

14. PLAINTIFF THEN NOTICED A GERMAN SHEPARD POLICE DOG ("K-9") HAD ACCOMPANIED DEFENDANT C. WILKIE TO THE LOCATION.

15. DEFENDANT C. WILKIE GAVE A VERBAL CADIANCE TO THE K-9 WHILE POINTING THE PEN-FLASHLITE IN PLAINTIFF'S DIRECTION, VERBALLY ORDERING THE DOG TO "GET HIM". THE K-9 UPON DEFENDANT

WILKIE'S COMMAND LUNGED AT PLAINTIFF
ATTACKING HIM WHILE HE lay prone, on his back and
DEFENSELESS.

16. PLAINTIFF WAS FRIGHTENED SEEING THE DOG LUNGE
AT HIM. THE DOG ATTEMPTED TO BITE PLAINTIFF'S
NECK, BUT WAS UNSUCCESSFUL When plaintiff placed
HIS LEFT FOREARM IN FRONT OF THE DOG.

17. THE K-9 BIT SHARPLY INTO PLAINTIFF'S left FOREARM
AND DEFENDANT WILKIE DID NOTHING TO prevent THE
ATTACK OR TRY TO prevent INJURY to plaintiff.

18. DEFENDANT C. WILKIE GAVE A SECOND VERBAL CADIANCE
TO THE DOG. THE K-9 RELEASED its bite on PLAINTIFF'S
LEFT FOREARM, CIRCLED to PLAINTIFF'S RIGHT SIDE
AND THEN THE DOG SUDDENLY ATTACKED, BITING SHARPLY
INTO PLAINTIFF'S LOWER RIGHT LEG CAUSING A DEEP
LACERATION.

19. DEFENDANT C. WILKIE GAVE A THIRD VERBAL
CADIANCE TO THE DOG AND THE K-9 SUDDENLY STOPPED
THE ATTACK ON PLAINTIFF'S lower RIGHT LEG SUDDENLY
SWITCHING HIS ATTACK TO PLAINTIFF'S TORSO AND
CHEST AREA. AGAIN, DEFENDANT C. WILKIE FAILED to
STOP THE DOG ATTACK AND prevent INJURY TO PLAINTIFF.

20. DEFENDANT C. WILKIE THEN GAVE SEVERAL VERBAL CADIANCES IN SUCCESSION TO THE K-9 AND THE DOG IMMEDIATELY BEGAIN BITING PLAINTIFFS UPPER RIGHT LEG RESULTING IN A DEEP LACERATION.

21. PLAINTIFF STILL LAYING PRONE ON HIS BACK UNDER THE MOBILE HOME WAS UNABLE TO DEFEND HIMSELF FROM THE ATTACKING DOG WHICH CONTINUED TO ATTACK HIS RIGHT LEG. PLAINTIFF WAS BLEEDING AND IN SHOCK, GREAT PAIN AND EMOTIONAL AND MENTAL ANGUISH, DUE TO THE ATTACK and INJURIES RESULTING FROM THE CONTINUED ATTACK.

22. PLAINTIFF HEARD ANOTHER INDIVIDUAL SAY TO DEFENDANT C. Wilkie, "[G]et the dog OFF Him, He's Gonna kill him." DEFENDANT WILKIE Despite HEARING the other OFFICER FAILED to INTERCEDE AND prevent Further Attack despite DEFENDANT Wilkie seeing First hand plaintiff bleeding profusely AND Injuries.

23. DEFENDANT C. Wilkie told PLAINTIFF VERBALLY "[Y]ou need to Come Out FROM UNDER THERE," PLAINTIFF Replied, "[I] will IF you keep the dog OFF me."

24. Defendant Wilkie again told Plaintiff, "[C]ome out from under there." Plaintiff attempted to crawl from under the mobile home on his stomach."

25. Suddenly, Defendant C. Wilkie gave a verbal cadiance to the K-9 and the dog suddenly attacked Plaintiff biting him on the buttocks.

26. Plaintiff reached behind him in an attempt to defend himself, and the dog suddenly bit down deeply into the back of Plaintiff's right leg drawing blood and great pain and discomfort.

27. Three individuals watching the attack walked toward Plaintiff verbally ordering Plaintiff to "[S]how me your hands."

28. Three individuals grabbed Plaintiff by his arms and legs and proceeded to physically drag Plaintiff on his stomach across the ground over a concrete area.

29. The individual's for the first time identified themselves as police officers.

30. Plaintiff asked the police officers, "[W]hat did I do wrong?" No response by the officers was given

31. An unidentified Police Officer placed his knee behind Plaintiff's Neck while he was laying prone on his stomach on concrete. A second unidentified Officer placed his knee in the small of Plaintiff's Back while he layed on the concrete.

32. Prior to the unidentified Officer securing Plaintiff with handcuffs, Defendant Wilkie gave another verbal cadiance to the K-9 where the Dog suddenly bit Plaintiff's leg behind his Right Knee drawing blood, resulting in more pain and suffering.

33. Following the attack on Plaintiff's Right leg and knee. Plaintiff was placed in handcuffs and assisted to his feet by two officers. Plaintiff could not walk without assistance, He was bleeding profusely and suffering extensive pain and mental anguish.

34. Plaintiff asked an unidentified officer, "[w]hat did I do wrong? Again no reply was given.

35. Plaintiff informed police officer's that he needed to go to the hospital for medical attention. No reply was given.

14

TRUNK OF THE VEHICLE. An unidentified Duval County Sheriff Deputy produced a bottle of RUBBING Alcohol and Began pouring the RUBBING Alcohol over Plaintiff's open, exposed wounds causing great pain, BURNING AND DISCOMFORT.

42. THE Application OF THE RUBBING Alcohol was INTENTIONAL And Reasonably the officer should HAVE Known that the RUBBING Alcohol As clearly Indicated on the instructions on the bottles label would only Aggrevate the open lacerations And the Application of the Rubbing Alcohol was done with malicious INTENT.

43. Minutes later, paramedics Arrived At THE location. Plaintiff INFORMED two paramedics that he needed to go to the hospital. Paramedics only wrapped plaintiff's leg with white gauze.

44. PLAINTIFF was placed in the back OF A patrol Vehicle still bleeding profusely FROM THE K-9 Attack, while in pain and SUFFERING, He was SHOCKED that the Attack Occured without provocation.

36. Plaintiff asked Defendant C. Wilkie, "[W]hat's this all about? Again no reply was given.

37. Defendant, Deputy Hartt, ordered two (2) officers to escort Plaintiff to a patrol vehicle

38. While escorted, Plaintiff recognized Detective David King, Nassau County Sheriff's Office who viewed the attack

39. Plaintiff asked Detective King, "[W]hat's this all about with the officer and the dog." Defendant replied, "[I]'ll speak to you when we get to the station."

40. Plaintiff asked an unidentified officer, "[A]m I under arrest?" The unidentified officer replied, "[I] don't know."

41. Plaintiff was escorted to the patrol vehicle; placed up against the trunk of the vehicle and photographed. Following being photographed, Plaintiff was turned around and bent over the

45. PLAINTIFF WAS TRANSPORTED TO JACKSONVILLE MEMORIAL BUILDING BY DETECTIVE G.M. ROSE, BADGE #63931.

46. WHEN ARRIVING, HE WAS ESCORTED TO A INTERVIEW ROOM WHERE DETECTIVE KING WAITED. HE ASKED DETECTIVE KING. "[W]HAT'S THIS ALL ABOUT?" DETECTIVE KING REPLIED, "[T]HERE'S A WARRANT FOR YOUR ARREST."

47. DETECTIVE KING INFORMED PLAINTIFF, "[W]E CALLED DUVAL COUNTY TO SERVE THE WARRANT.

48. PLAINTIFF ASKED DETECTIVE KING, "[W]HY DID you let them Attack me with the dog? DETECTIVE KING REPLIED, "[I] HAVE NOTHING TO DO with it. DETECTIVE KING STOOD by and WATCHED THE DOG ATTACK ON PLAINTIFF AS INITIATED BY DEFENDANT WILKIE AND DID NOT ACT TO PREVENT THE ATTACK OR TO protect the INJURIES to PLAINTIFF.

49. After some 4-hours subsequent to the dog attack, Plaintiff while still bleeding, in substantial pain and suffering was turned over by Detective King to Duval County Deputies. At the conclusion of the interview, Plaintiff again told Detective King, "[I] have to go to the hospital. Defendant Hartt told Plaintiff, "[Y]ou're going to Jail to be Booked."

50. Plaintiff due to his injuries needed assistance with walking. He was layed on the backseat of the patrol car by Defendant Hartt prior to transport to the Duval County Detention Center.

51. Plaintiff asked Defendant Hartt, who transported him to the Duval County Detention Center, "[W]hy did you let them put the dog on me? Defendant Hartt replied, "[Y]ou're lucky we didn't kill you."

52. PLAINTIFF WAS TRANSPORTED TO DUVAL COUNTY DETENTION CENTER IN PAIN, SUFFERING FROM THE INJURIES SUSTAINED IN THE K-9 ATTACK DELIBERATELY INITIATED BY DEFENDANT WILKIE WITHOUT REGARD TO PLAINTIFF'S PERSONAL SAFETY AND WELL-BEING IN VIOLATION OF FEDERAL CONSTITUTIONAL PROTECTIONS AFFORDED U.S. Constitution Amendment VIII, XIV.

53. DEFENDANT(S) WILKIE AND HARTT FAILURE TO PROVIDE IMMEDIATE MEDICAL ATTENTION TO PLAINTIFF'S INJURIES CONSTITUTED Reckless Disregard to PLAINTIFF'S PERSONAL SAFETY AND WELL-BEING AND THE FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT FOR HIS INJURIES CONSTITUTED DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS. U.S. Constitution Amendment VIII, XIV.

54. AS TO CLAIM 2, PLAINTIFF REASSERTS AND Realleges THE CLAIMS AND FACTS SET FORTH IN PARAGRAPHS 1 thru 53 INFRA.

55. Plaintiff Asserts Defendant(s) One (1) Unknown Nurse, Duval County Detention Center And One (1) Unknown Physician, Duval County Detention Center deprived Plaintiff of his Federal protected Constitutional Right while Acting under Color of State Law By failing to provide Adequate medical care and Treatment and Asserts the Claim of Tort for Negligence in the care and Treatment rendered which was Negligent, Inadequate and Outside of that of care Acceptable under Professional Norms.

56. Plaintiff Asserts that at all times Relevant to the Facts setforth in the Complaint Defendant(s) One (1) Unknown Nurse, Duval County Jail and One (1) Unknown Physician, Duval County Detention Center Acted with Deliberate Indifference to Plaintiff's personal Safety, Well-Being when failing to provide Adequate, Reasonable medical care and treatment following the K-9 Attack Initiated By Defendant C. Wilkie, Acting under Color of State Law.

20

61. DURING THE MEDICAL EXAMINATION, THE ATTENDING PHYSICAN ADMINISTERED AN INJECTION; SCRUBBED THE WOUNDS, BUT REFUSED to STITCH THE WOUNDS WHICH WERE SO DEEP AND INFECTED THAT HE COULD NOT [According to the Physican] STITCH THE WOUNDS. THE Physican WRAPPED PLAINTIFF'S LEG.

62. PLAINTIFF WAS RETURNED TO Dural County DETENTION Center AND ADMITTED TO THE FIRST-FLOOR LOWER Level.

63. DURING THE SUBSEQUENT TWO DAYS FOLLOWING ADMISSION TO THE DETENTION Center, PLAINTIFF WAS SEEN BY DEFENDANT One (1) UNKNOWN Nurse WHO REFUSED to CLEAN AND EXAMINE THE Wounds SUSTAINED DURING THE DOG ATTACK.

64. DEFENDANT, One (1) Unknown Nurse WAS MINISTERIALLY NEGLIGENT WHEN FAILING TO Follow ESTABLISHED Medical protocol OUTSIDE OF STANDARDS OF Reasonable Professional NORMS and diligence by FAILING to EXAMINE AND CLEAN THE Open dog BITE Wounds SUFFERED By Plaintiff DURING the attack WHICH Reasonably WAS necessary to prevent INFECTION.

57. PLAINTIFF WAS ESCORTED INTO THE DUVAL
County DETENTION Center, BLEEDING, IN SHOCK,
IN PAIN AND duress, both physically AND
MENTALLY AT THE HANDS OF INJURIES SUSTAINED
Due to the K-9 ATTACK INITIATED BY DEFENDANT
WILKIE.

58. WHEN ARRIVING IN THE DUVAL County DETENTION
Center BOOKING AREA, AN UNIDENTIFIED
AFRICAN- AMERICAN NURSE on DUTY TOOK
One look At PLAINTIFF, His Bloody condition
AND INJURIES AND told DEFENDANT WILKIE
WHO WAS ESCORTING PLAINTIFF, "[T]here's no
WAY I'm Gonna Let him be booked INTO
THIS Jail IN THE Condition he's IN."

59. PLAINTIFF WAS subsequently transported
TO SHANDS Hospital Emergency Room.

60. Upon ARRIVAL AT SHANDS, PLAINTIFF WAS
placed IN A wheelchair AND taken to the
QuickTech Emergency CARE DEPARTMENT WHERE
HE WAS EXAMINED By A STAFF Physician SOME
6-Hours FOLLOWING THE K-9 ATTACK WHICH
Resulted IN INJURIES.

65. DEFENDANT, One (1) Unknown Nurse only ADMINISTERED PAIN Pills AND Refused to CHANGE THE Blood SOAKED BANDAGES OF Plaintiff despite need per ESTABLISHED Medical protocol.

66. PLAINTIFF Complained Continously to DEFENDANT One (1) Unknown Nurse AND to DEFENDANT, One (1) Unknown physician that the open wounds HAd to be cleaned, EXAMINED and DRESSING CHANGED AND RE-WRAPPED WITH CLEAN BANDAGES. STILL DEFENDANT(S) One (1) Unknown Nurse and One (1) Unknown Physician FAILED to ACt AND provide TREATMENT UNDER ESTABLISHED MEDICAL protocol.

67. PLAINTIFF WAS SUBSEQUENTLY CHARGED IN CIRCUIT Court, FOURTH Judicial Circuit, DUVAL County by police Agents UPON AN ALLEGATION THAT PLAINTIFF INTERFERED WITH DEPUTIES WHEN HE ALLEGEDLY USED HIS HANDS AND FEET WHILE ATTEMPTING TO PROTECT HIMSELF FROM THE K-9 ATTACK.

68. PLAINTIFF WAS MOVED TO THE FOURTH FLOOR OF DUVAL County Detention Center.

69. Plaintiff was called to the Duval County Detention Center, Second Floor Medical Unit by Defendant One (1) Unknown Nurse. During the examination, it was found that Plaintiff's leg was infected and his feet and legs were severely swollen. Defendant, One (1) Unknown Nurse finally realizing that the wound was infected removed the bandages and cleaned the wound.

70. Plaintiff was subsequently returned to Shands Hospital Emergency Room.

71. Following arrival at Shands, Plaintiff was examined by an unidentified on duty physician who diagnosed Plaintiff's wounds as being infected.

72. Plaintiff was prescribed pain pills and given a penicillin shot with instructions to jail staff to clean the wound and provide fresh bandages daily

73. Plaintiff was returned to Duval County Detention Center.

74. PLAINTIFF WAS SEEN BY DEFENDANT ONE (1)
UNKNOWN NURSE WHO FAILED to DESPITE
SPECIFIC MEDICAL INSTRUCTIONS FAILED TO
CLEAN PLAINTIFF'S WOUNDS; WHO ONLY
APPLIED FRESH BANDAGES DESPITE HAVING
FIRST-hand VIEWED THE GREEN-DISCOLORED
WOUND.

75. DEFENDANT, ONE (1) UNKNOWN NURSE FAILED
TO NOTIFY THE JAIL PHYSICAN OF THE GREEN
DISCOLORED NATURE OF THE WOUND OR RETURN
PLAINTIFF TO THE COMMUNITY HOSPITAL FOR
TREATMENT.

76. PLAINTIFF CONTINUED TO SUFFER SUBSTANTIAL
AND SUFFERING FROM THE WOUNDS ON HIS
LEGS WHICH WERE SWOLLEN. PLAINTIFF CONTINUALLY
POINTED OUT HIS CONDITION, INCLUDING THE
GREEN DISCOLORED LACERATION ON HIS RIGHT LEG
TO BOTH DEFENDANT(S), ONE UNKNOWN NURSE AND
ONE (1) UNKNOWN PHYSICAN, BOTH OF WHOM DID
NOTHING TO ASSIST THE PLAINTIFF.

77. PLAINTIFF WAS SUBSEQUENTLY TRANSFERRED
FROM THE DUVAL COUNTY DETENTION CENTER.

78. Following Plaintiff's Admission to Nassau County Jail. Plaintiff was seen by Nurse O'Quinn who conducted Examination of Plaintiff's Wound.

79. Nurse O'Quinn, Nassau County Jail Following Examination that the wound was infected and now Due to lack of Adequate Medical Care contained Gangreen.

80. Nurse O'Quinn noted in Medical Records Regarding Plaintiff that Plaintiff's wound was infected; Gangreen had set in and the laceration on His Right leg which emitted a Foul Smell.

81. Nurse O'Quinn, ordered Plaintiff to take a shower and Report Back to Her For Treatment.

82. Nurse O'Quinn noted Plaintiff's legs were Severely swollen Above their Normal Size with Green-Colored Seepage Emitting From the laceration Along with a Foul Smell.

83. Nurse O'Quinn Told Plaintiff Following the Examination that she couldn't believe Duval County Jail Let this occur And that she would Do Everything she could to Prevent the leg from

26

HAVING TO BE Amputated.

84. NURSE O'QUINN CALLED the NASSAU County
    Jail ADMINISTRATOR, CAPTAIN WHITE AND CAPTAIN
    LOWE to personally view the EXTENT OF PLAINTIFF'S
    MEDICAL CONDITION. PHOTOGRAPHS OF PLAINTIFF'S
    INJURIES WERE TAKEN. BOTH CAPTAIN LOWE and
    CAPTAIN WHITE STATED THEY DID NOT WANT TO
    BE liable FOR DUVAL County MEDICAL STAFF'S
    NEGLIGENCE AND FAILURE TO Provide proper
    MEDICAL TREATMENT.

85. FOR THE SUBSEQUENT 3-month PERIOD Following
    THE K-9 ATTACK, PLAINTIFF AS A Result OF
    THE INJURIES SUFFERED COULD NOT WALK
    WITHOUT ASSISTANCE; WAS IN CONTINUAL PAIN
    AND MENTAL ANGUISH; SUFFERED EMOTIONAL
    AND MENTAL SUFFERING.

86. PLAINTIFF DUE TO THE DOG ATTACK HAS BEEN
    UNABLE TO SLEEP NORMALLY; HAS A Hightened
    DEGREE OF NERVOUSNESS ON HIS pre-EXISTING
    MENTAL ILLNESS. MEDICAL HEALTH RECORDS
    Reflect THAT PLAINTIFF SUFFERS FROM
    POST-TRAUMATIC STRESS DISORDER; SEVERE
    DEPRESSION; ANXIETY. THE psychiatrist
    Recommended long-term psychiatric CARE
    AND TREATMENT.

87. NASSAU COUNTY JAIL STAFF ORDERED PLAINTIFF TO BE EXAMINED BY A PSYCHIATRIST. THE PSYCHIATRIST, AS INDICATED ON EXISTING MENTAL HEALTH RECORDS REFLECTS FROM MAJOR MENTAL ILLNESS. DUE TO THE K-9 ATTACK, PLAINTIFF SUFFERS FROM SLEEP deprivation,' HAS A HIGHTENED DEGREE OF NERVIOUSNESS AROUND DOGS WHICH NEVER EXISTED PRIOR TO THE K-9 ATTACK AND SUFFERS FROM periodic NIGHTMARES WHERE HE ENVISIONS DOGS ATTACKING HIM IN HIS SLEEP.

88. Following EVALUATION AND EXAMINATION BY THE Psychiatrist, NASSAU County Jail Physican, DR PRICE Recommended PLAINTIFF UNDERGO EXAMINATION BY A NEUROLOGIST, INCLUDING NERVE TESTING. DR. PRICE FURTHER ORDERED AN "MRI" PERFORMED ON PLAINTIFF.

89. THE SUBSEQUENT EXAMINATION BY THE Neurologist CONCLUDED THAT PLAINTIFF SUFFERS FROM NERVE DAMAGE IN HIS RIGHT LEG, PLAINTIFF SUFFERS FROM Limited MOBILITY OF HIS LEG WHICH DID NOT EXIST PRIOR TO THE DOG ATTACK. PLAINTIFF WALKS WITH A PERMANENT LIMP AS A Result OF HIS INJURIES SUFFERED IN THE DOG ATTACK THE NERVE DAMAGE WAS EVALUATED AND

DETERMINED TO RUN FROM PLAINTIFF'S RIGHT
LEG TO HIS LOWER BACK.

90. FLORIDA DEPARTMENT OF CORRECTIONS MENTAL
HEALTH EVALUATIONS AFFIRM THE PREVIOUS
DIAGNOSIS THAT PLAINTIFF SUFFERS FROM
BI-POLAR DISORDER; LOSS OF SLEEP; INCREASED
ANXIETY; NERVOUSNESS AND STAFF PSYCHIATRIST
PRESCRIBED MEDICATION; LONG-TERM COUNSELING;
DUE TO THE TRAUMA SUFFERED FROM THE K-9 ATTACK.

91. NASSAU COUNTY MEDICAL STAFF ADVISED PLAINTIFF
THAT THEY COULD DO NO MORE FOR PLAINTIFF
MEDICALLY IN THAT NASSAU COUNTY WAS NOT
RESPONSIBLE FOR THE INJURIES WHICH OCCURED
AT THE HANDS OF DUVAL COUNTY POLICE AGENTS

92. FOLLOWING HIS CONVICTION, PLAINTIFF WAS
TRANSFERRED TO THE FLORIDA DEPARTMENT
OF CORRECTIONS AND RECEIVED AT RMC-LAKE
BUTLER.

93. FOLLOWING ARRIVAL AT RMC-LAKE BUTLER, PLAINTIFF
WAS SEEN BY THE PRISON PSYCHIATRIST AND FOLLOWING
EVALUATION WAS DIAGNOSED WITH POST-TRAUMATIC

STRESS DISORDER, MAJOR DEPRESSION, ANXIETY AND WAS PRESCRIBED PSYCHIATRIC MEDICATIONS PLAINTIFF CONTINUES TO SUFFER NIGHTMARES AND FLASHBACKS FROM DOG ATTACKS.

94. PLAINTIFF WAS TRANSFERRED FROM RMC-LAKE BUTLER TO WAKULLA CORRECTIONAL INSTITUTION ANNEX WHERE HE WAS EVALUATED BY A PSYCHIATRIST AND MEDICAL STAFF WHOSE FINDINGS FOLLOWING EVALUATION INDICATE PLAINTIFF SUFFERS FROM POST-TRAUMATIC STRESS DISORDER, MAJOR DEPRESSION, ANXIETY, HEIGHTENED NERVOUSNESS, WHILE MEDICAL EVALUATIONS CONFIRMED THE PREVIOUS FINDING OF NERVE DAMAGE EXISTING FROM HIS RIGHT LEG TO HIS LOWER BACK. PLAINTIFF SUFFERED DISFIGURMENT AS A RESULT OF THE K-9 ATTACK INITIATED BY DEFENDANT C. WILKIE, DEPUTY SHERIFF (K-9 UNIT), DUVAL COUNTY SHERIFF'S OFFICE AND PLAINTIFF WALKS WITH A PERMANENT LIMP AND MUST USE A CAIN FOR WALKING ASSISTANCE. PLAINTIFF WAS PRESCRIBED BOTH PSYCHIATRIC AND PAIN MEDICATION AND HIS PHYSICAL, EMOTIONAL AND PSYCHOLOGICAL ISSUES ARE ONGOING AND CONTINUING.

95. Approximately seperate psychiatrist since the K-9 attack initiated by Defendant C. Wilkie have confirmed Plaintiff suffers from major mental illness since the K-9 attack which is debilitating in nature and resulted in mental pain and suffering which is ongoing and continuing.

96 As a result of the K-9 attack. Initiated by Defendant C. Wilkie; Plaintiff suffered substantial nerve damage to his right leg, extending to his lower back; permanent disfigurment; pain and mental suffering in that said Actions of Defendant(s) C. Wilkie, were done without provocation and without regard to Plaintiff's personal safety or well-being. Defendant C. Wilkie was deliberately indifferent to the safety and well-being of Plaintiff.

97. As a result of the acts of Defendant(s) One (1) unknown Nurse, Duval County Detention Center and one (1) unknown psychian

98. Due to the negligent acts of Defendant(s) one (1) unknown nurse and one (1) unknown physician, Plaintiff suffers from nerve damage which was left untreated, not properly diagnosed. Plaintiff was subject to gangreen setting into his lacerations due to infections which set in and which were reasonably preventable with adequate medical care, treatment and diagnosis, Plaintiff unduly suffered due to Defendant's negligent actions which were deliberately indifferent to his medical needs. U.S. Constitution Amendment VIII, XIV

99. Defendant John Rutherford, Sheriff, Duval County failed to adequately train Defendant C. Wilkie (K-9 Unit) regarding supervision of the K-9 utilized in the attack of Plaintiff on October 23, 2007. Failed to act to prevent said injuries to Plaintiff in his official capacity as Sheriff of Duval County, Florida in violation of federal constitutional protection

AFFORDED U.S. Constitution Amendment VIII, XIV WHILE ACTING UNDER COLOR OF STATE LAW.

100. PLAINTIFF REQUESTS JUDGMENT AGAINST DEFENDANT'S IN THEIR INDIVIDUAL CAPACITIES FOR ACTUAL, PUNITIVE DAMAGES IN A SUM WITHIN THE JURISDICTIONAL LIMITS OF THIS COURT, TOGETHER WITH COSTS OF THE SUIT, REASONABLE ATTORNEY FEES AND COSTS.

VIII.   **RELIEF REQUESTED:**   State briefly what you want the Court to do for you.  Again, do not make any legal arguments or cite any cases or statutes.

PLAINTIFF AWARDED NOMINAL DAMAGES AGAINST DEFENDANTS

IN THE Amount of $200,000 Dollars

AWARD PLAINTIFF COMPENSATORY DAMAGES AGAINST

DEFENDANTS IN THE Amount of $7,100.00 Dollars

AWARD PLAINTIFF Punitive DAMAGES AGAINST DEFENDANTS

IN THE Amount of $1,000,000 Dollars

AWARD PLAINTIFF Reasonable Attorney FEE'S AND COSTS

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Signed this  *12TH*  day of  *MAY* , 20 *10* .

STEVEN CATHEL JONES, DC # J21218

WAKULLA Correctional Institution Annex

110 Melaleuca Drive
CRAWFORDVILLE, FLORIDA 32327

(Signatures of all Plaintiffs)

DC 225 (Rev. 9/03)